IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J & J SPORTS PRODUCTIONS, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 17-1937 |
| | : | |
| RAHIM HENDERSON, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                 **August 28, 2019**

      Plaintiff J & J Sports Productions, Inc. (J & J), a distributor and licensor of certain closed circuit and pay-per-view sports programming, brings claims against Defendants Rahim Henderson, individually and d/b/a Atmosphere Bar & Lounge, LLC (Atmosphere) and Atmosphere itself, pursuant to, inter alia, the Communications Act of 1934, 47 U.S.C. § 605.[1] J & J alleges Defendants pirated *The Fight of the Century" Floyd Mayweather Jr. v. Manny Pacquiao Fight Program* (the Program) on Saturday, May 2, 2015, the rights to which were owned by J & J. Before the court is J & J's application for default judgment against Defendants pursuant to Federal Rule of Civil Procedure 55. For the reasons set forth below, the Court grants J & J's application.

**FACTS**

      J & J personally served its Complaint on Defendants on January 8, 2018, at Federal Correctional Institution Ashland, where Henderson was incarcerated.[2] Henderson did not file any response or enter an appearance on behalf of himself or Atmosphere. J & J filed a request for

---

[1] J & J also alleges a violation of 47 U.S.C. § 553, but has elected to proceed only on the § 605 claim.

[2] The Bureau of Prisons inmate locator indicates that he is presently incarcerated at Federal Correctional Institution Butner.

default on February 21, 2018, which the Clerk of Court subsequently entered. On March 14, 2018, J & J applied to the Court for a default judgment, and a hearing was scheduled for April 12, 2018. On April 10, 2018, the Court received a letter from Henderson requesting a continuance of the hearing until after the end of his incarceration—in the year 2021. The Court denied this request without prejudice so Henderson could challenge the default under Rule 55(c) and held the hearing on April 12, 2018, as scheduled. The application is now ripe for disposition.

**DISCUSSION**

When a plaintiff shows a defendant's "fail[ure] to plead or otherwise defend, . . . the clerk must enter [the defendant's] default." *See* Fed. R. Civ. P. 55(a). The default is valid only if the defendant was properly served. *See Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 270 (E.D. Pa. Mar. 11, 2014). The plaintiff may then apply to the court for a default judgment. *See* Fed. R. Civ. P. 55(b)(2). Default judgments are generally disfavored, and courts must use "sound judicial discretion" in weighing whether to enter a default judgment. *See E. Elec. Corp. of N.J. v. Shoemaker Const. Co.*, 652 F. Supp. 2d 599, 604 (E.D. Pa. 2009). Before entering a default judgment, a court must consider three issues: "(i) whether the plaintiff will be prejudiced if the default is denied, (ii) whether the defendant has a meritorious defense, and (iii) whether the default was the product of defendant's culpable conduct." *Id.* (citing *Spurio v. Choice Security Systems, Inc.*, 880 F. Supp. 402, 404 (E.D. Pa. 1995).

In this case, the Court finds that an entry of default judgment is appropriate. J & J will be prejudiced if the default judgment is not granted because it will be left without recourse and neither Henderson nor Atmosphere have defended against J & J's claims. Due to the Defendants' failure to respond and the fact that the violation is based on strict liability, they have not presented any claims of a meritorious defense. *See J & J Sports Prods., Inc. v. Cruz*, No. Civ. A. 14-2496, 2015

WL 2376051, at *2 (E.D. Pa. May 18, 2015) (stating violation of § 605 is a strict liability offense). Finally, the Defendants' default is based on their own culpable conduct. J & J provided proof of service on the Defendants and Henderson has written a letter request to the Court showing that both Defendants had notice of the litigation and failed to respond. These facts are sufficient to satisfy the requirements to enter a default judgment against Defendants.

Turning to the underlying merits, J & J seeks to recover under 47 U.S.C. § 605, which prohibits the unauthorized interception and exhibition of communications. To obtain relief under § 605, a plaintiff must show that "Defendants intercepted a broadcast, Defendants were not authorized to intercept the broadcast, and Defendants showed this broadcast to others." *J & J Sports Prod., Inc. v. Gallegos*, No. 08-201, 2008 WL 3193157, at *3 (D.N.J. Aug. 5, 2008). A violation of § 605 is a strict liability offense. *See J & J Sports Prods., Inc. v. Martinez*, No. 13-6885, 2014 WL 5410199, at *3 (E.D. Pa. Oct. 23, 2014). J & J established that it had exclusive nationwide distribution rights to the Program, Defendants intercepted the broadcast, and the Program was broadcast at Atmosphere to patrons. *See* Pl.'s Br. Supp. Appl. Default J., Osgood Aff. 2-3; Gagliardi Aff. ¶ 9. Accordingly, J & J has shown its right to relief under § 605, leaving only the question of damages.

In determining damages for a default judgment, "the Court need not accept the moving party's legal conclusions or factual allegations relating to the amount of damages." *E. Elec. Corp. of N.J*, 652 F. Supp. 2d at 605. Rather than rely on the allegations in the complaint to determine damages, "[t]he court may conduct hearings or make referrals." Fed. R. Civ. P. 55(b)(2)(B). The Court may also "rely on detailed affidavits submitted by the parties." *Cruz*, 2015 WL 2376051, at *3. The Court will thus consider the affidavit from J & J's investigator, president, and counsel as part of the record.

A plaintiff pursuing claims under § 605(e), J & J, is entitled to recover either actual damages or statutory damages, *see* 47 U.S.C. § 605(e)(3)(C)(ii), as well as enhanced damages if the violation was committed "willfully and for the purpose of direct or indirect commercial advantage or private financial gain," *Id.* § 605(c)(3)(C)(iii). In this case, J & J seeks $10,000 in statutory damages and $30,000 in enhanced damages. The court will consider each of its requests in turn.

The Court has the discretion to award statutory damages between $1,000 and $10,000 per violation, which represent an estimation—not a mathematical computation—of actual damages. *See* 47 U.S.C. § 605(e)(3)(C)(i); *see also Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 295-96 (E.D. Pa. Mar. 11, 2014) (citing *Coxcom, Inc. v. Chaffee*, No. 05-107S, 2007 WL 1577708, at *3 (D.R.I. May 31, 2007), *aff'd*, 536 F.3d 101 (1st Cir. 2008)). In estimating actual damages for the purpose of fixing the amount of statutory damages, the Court first considers the amount Defendants would have paid had they obtained a lawful license. *See Cruz*, 2015 WL 2376051, at *5. Here, the evidence shows that J & J charged a $3,000 licensing fee for a commercial establishment with a capacity of between 1 and 100 individuals, like Atmosphere, to show the Program. *See* Pl.'s Aff. Supp. Appl. Default J. Ex. 2 (rate card listing price of $3,000 for a venue with a capacity of 1-100). Thus, J & J's actual, out-of-pocket loss is $3,000.

The Court next considers "any profits of the violator that are attributable to the violation which are not taken into account in computing actual damages," 47 U.S.C. § 605(e)(3)(C)(i)(I). In estimating profits, the Court may consider a number of factors including the size of the establishment, number of patrons, number of screens broadcasting, cover charges, and additional money spent by patrons due to the broadcast. *See Cruz*, 2015 WL 2376051, at *5 (citing *Yakubets*, 3 F. Supp. 3d at 280). In this case, Investigator Osgood, who observed the Program unlawfully

displayed at Atmosphere and submitted an affidavit, recorded approximately 65 people in the bar (at three different times he noted the headcount was 64, 64, and 68). *See* Pl.'s Br. Supp. Appl. Default J., Osgood Aff. 2-3. The capacity of the establishment was approximately 100 people. *Id.* There is no evidence of how many of the people attended because of the interception, but there is evidence from Investigator Osgood's affidavit that Atmosphere advertised the showing of the Program on Facebook. Investigator Osgood also noted there were four televisions displaying the Program and he paid a $10 cover to enter the establishment. *Id.*

Without specific evidence regarding how many individuals viewed the advertisement and chose to go to Atmosphere because of the showing, it is reasonable to estimate that at least half of the people attended because of the showing of the Program (32.5 people). The people who attended because of the showing paid the $10 cover to enter and could have reasonably spent $20 each on food and drink ($30), totaling $975 of additional profits for Defendants (32.5 x $30). Thus, in addition to the $3,000 licensing fee, the total statutory damage amount is $3,975. *See generally Cruz*, 2015 WL 2376051, at *6 (citing *Yakubets*, 3 F. Supp. 3d at 281) (describing estimation of statutory damages).

The court may also increase the damages by an amount not more than $100,000, if the Court finds the violation was committed "willfully and for the purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. §605(e)(3)(C)(iii). To recover these enhanced damages, a plaintiff must establish that a defendant intentionally intercepted a signal and had knowledge of, or reckless disregard as to, the unlawfulness of that interception. *Cruz*, 2015 WL 2376051, at *6. Willfulness can be inferred from the particular nature of the satellite programming and interception of the transmission. *See Yakubets*, 3 F. Supp. 3d at 285-86 (permitting inference of willfulness from the well-pleaded facts). Although the meaning of

"commercial advantage or private financial gain" is not defined, the requirement can "be satisfied by a broad set of circumstances." *Yakubets*, 3 F. Supp. 3d at 288.

The evidence here shows that Defendants' interception was willful. According to Mr. Gagliardi's Affidavit, J & J's "programming is not and cannot be mistakenly, innocently or accidentally intercepted." Gagliardi Aff. ¶ 9 (describing encryption of the programming). The mere interception of the transmission permits the Court to draw the reasonable inference of intentional conduct. Also, this Court has found it sufficient that the average individual recognizes such conduct as unlawful to satisfy the scienter requirements for an award of enhanced damages. *See Cruz*, 2015 WL 2376051, at *6; *Yakubets*, 3 F. Supp. 3d at 287-88. Thus, the Court finds Defendants' violations were willful.

The Court also finds the "commercial advantage or private financial gain" requirement is satisfied. The evidence shows that Atmosphere's bar is a commercial establishment. It charged a cover fee of $10 for admission on the night of the Program. Investigator Osgood reported the sale of food and beverages throughout the night. Additionally, the Facebook advertisement stated the $10 cover as well as the sale of "food, hookah, drink specials, and a great fight." *See* Pl.'s Br. Supp. Appl. Default J., Osgood Aff. 11.The Court thus finds that the Program was shown as an inducement for patrons to purchase food and beverages, and the violation was made for the purposes of commercial advantage or private financial gain. *See Yakubets*, 3 F. Supp. 3d at 288-89.

In measuring enhanced damages, applying a multiplier between three and six times actual or statutory damages is appropriate to achieve the goals of deterrence and disgorgement. *See Yakubets*, 3 F. Supp. 3d at 291. The Court concludes that the minimum multiplier of three is

appropriate because there is no evidence Defendants are repeat offenders. The Court awards J & J treble statutory damages as enhanced damages, for an additional award of $11,925.

The final issue the Court must address is whether Henderson is personally liable for the full amount of the award. The Court concludes that he is only jointly and severally liable to the extent of the $3,000 licensing fee. An individual defendant may be vicariously liable for the violations of a business entity if he "(1) has the right and ability to supervise the violative activity, although he need not actually be supervising, because he need not know of the violative activity, and (2) has a direct financial interest in the violation, . . . that directly flow from the violative activity." *See J & J Sports Productions, Inc. v. Cruz*, Civ. A. No. 14-2496, 2015 WL 2376290, at *4 (E.D. Pa. May 18, 2015). Nevertheless, vicarious liability does not extend beyond actual damages. *See Yakubets*, 3 F. Supp. 3d at 301-02 (extending vicarious liability to individual defendant only to the extent of actual damages, i.e. the licensing fee). Although the Court may infer Henderson received some profits as a managing member of Atmosphere Bar & Lounge, and is thus vicariously liable for the violation, J & J has not established how much, if anything, Henderson actually received from the interception. Nor has J & J has established that Henderson personally intercepted the program, directed employees to intercept the program, or had knowledge of the interception. As a result, the Court finds his personal exposure is limited to the $3,000 lost licensing fee.

**CONCLUSION**

For the reasons set forth above, the Court grants J & J's default judgment and awards statutory damages of $3,975 and enhanced damages of $11,925, for a total of $15,900, with Defendant Henderson being jointly and severally liable only for actual damages of the $3,000 licensing fee.

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, C.J.