

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J & J SPORTS PRODUCTIONS, INC. | : | CIVIL ACTION |
| v. | : | No. 17-1937 |
| RAHIM HENDERSON, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                     **December 16, 2019**

Plaintiff J & J Sports Productions, Inc. (J & J) moves pursuant to Federal Rule of Civil Procedure 59(e) to alter or amend a default judgment entered against Defendants Rahim Henderson, individually and d/b/a Atmosphere Bar & Lounge, LLC, and Atmosphere Bar & Lounge, LLC (Atmosphere) on August 28, 2019. The default judgment awarded J & J damages for Defendants' violation of the Cable Communications Policy Act of 1934, 47 U.S.C. § 605, in the total amount of $15,900, and held Henderson jointly and severally liable for $3,000 of the award. J & J asks this Court to increase the damages award and to hold Henderson individually liable for the entire award, arguing these changes are necessary to correct clear errors of law in the original default judgment. For the reasons stated below, the Court will deny J & J's motion. However, because upon further review, it appears the Court improperly held Henderson individually liable, the Court will alter its August 28, 2019, judgment to reflect that Henderson is not individually liable for any portion of the damages award.

**BACKGROUND**

J & J sued Defendants for intercepting and broadcasting at Atmosphere a professional boxing match (the Program) to which J & J owned the exclusive rights, alleging Defendants' conduct violated the Cable Communications Policy Act. After Defendants failed to respond to the Complaint, J & J obtained entry of their defaults and filed an application for default

judgment. On August 28, 2019, after a default judgment hearing, this Court entered an Order granting J & J's application and entering a default judgment against Defendants. *See* Order, Aug. 28, 2019, ECF No. 23. The Order awarded J & J $15,900 in damages, comprised of $3,975 in statutory damages and $11,925 in enhanced damages. The Order also provided Henderson was jointly and severally liable for $3,000 of the award—the amount of the licensing fee Defendants would have had to pay to show the Program lawfully.

J & J thereafter filed the instant motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e) on September 26, 2019. J & J argues relief is warranted because the Court committed clear error by (1) calculating statutory damages as an "estimation of actual damages" and (2) holding Henderson jointly and severally liable for only $3,000 of the damages award. J & J asks the Court to amend its August 28, 2019, Order to increase the award of statutory damages to $10,000 and to hold Henderson jointly and severally liable for the entire award.

**DISCUSSION**

A party moving to alter or amend a judgment pursuant to Federal Rule of Civil Procedure 59(e) must demonstrate one of three grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice." *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995) (internal quotation marks and citations omitted). In this case, J & J invokes the third ground, arguing it has established this Court committed clear error in calculating statutory damages and determining the extent of Henderson's individual liability. "A finding of clear error requires a definite and firm conviction that a mistake has been committed." *United States v. Jasin*, 292 F. Supp. 2d 670, 676 (E.D. Pa. 2003) (citations and quotation marks omitted).

As a threshold matter, Rule 59(e) motions are granted sparingly, and they cannot be used merely to have a court "rethink a decision already made." *Jarzyna v. Home Properties, L.P.*, 185 F. Supp. 3d 612, 622 (E.D. Pa. 2016) (citations omitted). Many of the arguments J & J makes in this motion are identical to arguments made in its application for default judgment. *See generally* App. for Default J., ECF No. 14-1. The Court considered those arguments in ruling on J & J's application for default judgment but found them unpersuasive. Because however, the Court did not specifically address J & J's arguments in its August 28, 2019, Memorandum, the Court will discuss those arguments herein.

J & J first argues the Court committed clear error in calculating statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II). Under § 605(e)(3)(c)(i), a plaintiff may elect to have damages calculated under one of two provisions—the actual damages provision or the statutory damages provision. The actual damages provision permits a plaintiff to "recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages." 47 U.S.C. § 605(e)(3)(C)(i)(I). In determining profits under the actual damages provision, the plaintiff is required to prove the violator's gross revenue, and the violator is required to prove any deductible expenses and any profit not attributable to the violation. *See id.*

The statutory damages provision, in contrast, permits a plaintiff to "recover an award of statutory damages for each violation . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just." *Id.* § 605(e)(3)(C)(i)(II). Unlike the actual damages provision, the statutory damages provision is silent as to how the amount of statutory damages is to be determined. *See id.* The statutory damages provision gives the Court discretion to award the amount it "considers just." *See id.*

3

Although the Third Circuit has not addressed the issue, most of the district courts within the Third Circuit, including this Court, have concluded that statutory damages are merely an alternative to actual damages, and as such, should be determined by estimating, rather than calculating, actual damages for a violation. *See, e.g., J & J Sports Prods., Inc. v. Cruz*, No. 14-2496, 2015 WL 2376051, at *4–5 (E.D. Pa. May 18, 2015); *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 274 (E.D. Pa. 2014) (estimating actual damages to award statutory damages under similar provision 47 U.S.C. § 553); *J & J Sports Prods., Inc. v. Tibiri-Tabara, LLC*, No. 18-8819, 2019 WL 3402494, at *4 (D.N.J. July 26, 2019) ("[A]n award of statutory damages pursuant to § 605 should approximate actual damages."); *Joe Hand Promotions, Inc. v. Tickle*, No. 12-1874, 2016 WL 393797, at *6–7 (M.D. Pa. Feb. 2, 2016) (applying *Yakubets* approach to award statutory damages under 47 U.S.C. § 553); *Kingvision Pay-Per-View, LTD. v. Lardo*, No. 10-0059, 2010 WL 3463316, at *3 (W.D. Pa. Sept. 1, 2010) (awarding a flat sum for a violation to compensate plaintiff for licensing fee and defendants' estimated profits).[1] This method typically results in a

---

[1] Both 47 U.S.C. § 553 and 47 U.S.C. § 605 prohibit the unauthorized interception and exhibition of communications. The two statutes provide alternative forms of relief depending on the interception that takes place: § 605 governs interception of satellite transmissions and § 553 governs the interception of cable system transmissions. The statutes have identical language regarding the damages a court may award except that § 605 allows for higher statutory damages than § 553. *See* 47 U.S.C. § 605 (providing for statutory damages award between $1,000 and $10,000 for each violation); 47 U.S.C. § 553 (providing for a statutory damages award between $250 and $10,000 for all violations); *see also J & J Sports Prods., Inc. v. Cruz*, No. 14-2496, 2015 WL 2376051, at *2 (E.D. Pa. May 18, 2015). As a result, this Court, and many others, apply the same methodology in determining statutory damages to both statutes, although a plaintiff may only proceed under one statute in seeking damages. *See, e.g., Cruz*, 2015 WL 2376051, at *4 (applying reasoning from *Yakubets* as to § 553 to violation under § 605 and stating "[s]ection 605 parallels § 553 in language and structure").

damages award that includes the cost to license the show legally and an estimate of the defendant's profits from the violation. *See Yakubets*, 3 F. Supp. 3d at 282.[2]

In calculating statutory damages in this case, the Court followed the widely accepted approach of estimating actual damages and Defendants' profits from the violation. As a result, the Court awarded J & J statutory damages of $3,000 for the fee Defendants would have paid to broadcast the Program lawfully. The Court awarded J & J an additional $975 in statutory damages by estimating Defendants' profits.[3] Finally, the Court awarded enhanced damages by applying a multiplier of three because the violation was made for the purpose of commercial advantage. The Court entered judgment against Defendants for a total of $15,900.

Under J & J's first claim, J & J makes four arguments regarding the Court's damages award. J & J first argues the Court's estimation of actual damages under the statutory damages provision of 47 U.S.C. § 605 is a clear error of law because it conflates the provision with the

---

[2] District courts in other circuits have used varying methods to calculate statutory damages. Despite any nuances between approaches, most courts link statutory damages to the estimation of either the licensing fee the defendant would have had to pay or the defendant's profits from the violation such as a per patron fee based on the actual number of patrons present or the maximum capacity of the venue. *See, e.g., J & J Sports Prods., Inc. v. Gomez*, No. 18-5119, 2019 WL 4744229, at *8 (E.D.N.Y. Sept. 19, 2019) (discussing two methods for statutory damages including a "flat-fee" method of awarding the amount of the licensing fee, or the "per-person" method awarding damages by number of patrons who viewed program multiplied by the fee for each person to view program individually); *J & J Sports Prods., Inc v. Dabrowski*, No. 13-5931, 2015 WL 9304347, at *6–7 (N.D. Ill. Dec. 22, 2015) (applying licensing fee as a baseline for estimate of statutory damages); *J & J Sports Prods, Inc. v. El Tapatio, Inc.*, No. 17-1825, 2018 WL 2714896, at *3 (D. Md. June 5, 2018) (employing three approaches including fee multiplied by number of patrons, fee multiplied by establishment's maximum occupancy, or the flat-fee of the license) (citing *J & J Sports Prods., Inc. v. Quattrocche*, No. 09-3420, 2010 WL 2302353, at *2 (D. Md. June 7, 2010)).

[3] In estimating Defendants' profits, the Court stated, "it is reasonable to estimate that at least half of the people attended because of the showing of the Program (32.5 people). The people who attended because of the showing paid the $10 cover to enter and could have reasonably spent $20 each on food and drink ($30), totaling $975 of additional profits for Defendants (32.5 x $30)." *See* Mem. 5, Aug. 28, 2019, ECF No. 22.

5

actual damages provision in § 605, rendering the statutory damages provision superfluous. Second, J & J argues the Court's consideration of Defendants' profits in the context of statutory damages was a clear error of law because the statutory damages provision does not mention profits. Third, J & J argues the Court committed clear error by improperly placing the entire burden on the plaintiff to establish profits under the statutory damages provision even though the actual damages provision does not require as much. Finally, even if the Court's estimation of actual damages is correct, any estimation of actual damages is not per se only the licensing fee for broadcasting the Program legally. The Court addresses each argument in turn.

J & J first argues the Court's methodology conflates the actual damages and statutory damages provisions because the *estimation* of actual damages under the statutory damages provision and the computation of damages under the actual damages provision are "effectively the same." Mot. to Alter J. 10–11. J & J argues Congress "would not have bothered to make separate provisions for actual and statutory damages if statutory damages were designed to be an approximation of actual damages." *Id.* This argument is unavailing.

First, the two provisions *may* lead to different damages awards—although not in this case. The actual damages provision requires a plaintiff to establish the *actual damages suffered* and the profits attributable to the defendant's violation. The statutory damages provision, on the other hand, allows a court to award statutory damages as the court deems to be *just* in any given case. Although it is possible actual damages and statutory damages may be similar in a case, such a result does not conflate the two separate provisions. A "just" award in one case may very well be closely aligned with actual damages. In another case, it might not be. For purposes of this case, the Court found it just to award statutory damages roughly equivalent to the damages J & J actually suffered.

6

Second, as noted in *Yakubets*, the two provisions function differently. The actual damages provision requires a plaintiff to *prove* actual damages as well as the defendant's gross revenue. *See* § 605(e)(3)(C)(i)(I). The statutory damages provision does not. *See id.* § 605(e)(3)(C)(i)(II). Where a plaintiff does not issue a rate card or a defendant does not advertise that it will broadcast the pirated program, actual damages may be difficult to prove. The statutory damages provision thus permits an alternative when specific proof of actual damages is unavailable. Under the statutory damages provision, the burden is less demanding on the plaintiff but still allows a reasonable award in light of the facts of a case. *See Yakubets*, 3 F. Supp. 3d at 278 n.19 (discussing case law supporting the "trade-off for demanding less proof" under the statutory damages provision).

In this case, J & J was not required to *prove* Defendants' gross revenue pursuant to § 605(e)(3)(C)(i)(I). Rather, the Court estimated Defendants' profits from the violation based on certain assumptions regarding the number of patrons who came to see the Program and how much they could have spent, given J & J's viability to engage in discovery in light of Defendants' default. *See Yakubets*, 3 F. Supp. 3d at 281 ("[G]iven [plaintiff's] inability to take discovery, the Court will assume [certain facts] .... These are generous allowances given the lack of evidence."). Based on the assumptions stated in the Court's Memorandum, the Court awarded damages based on the licensing fee and an *estimation* of Defendants' profits based on the record provided. The Court is not persuaded its approach conflates the two damages provisions.[4]

---

[4] The Court notes J & J has made this same argument to no avail before several other courts. For the same reasons articulated by these other district courts, the Court finds no reason to deviate from its current approach in awarding statutory damages. *See, e.g., J & J Sports Prods., Inc. v. Maglietta*, No. 17-1960, 2019 WL 2443041, at *5 (E.D. Pa. June 11, 2019) (discussing J & J's failed argument before at least two other district judges requesting more than an estimate of actual damages); *Tibiri-Tabara, LLC*, 2019 WL 3402494, at *5 (declining to depart from statutory damages approach in light of J & J's argument that current approach conflates actual and statutory damages provisions).

7

J & J next argues the Court's consideration of Defendants' profits from the violation in estimating statutory damages was a clear error of law because the statutory damages provision does not mention profits. Again, the Court disagrees it made a clear error. The Court awarded statutory damages based on an estimation of actual damages. Although the statutory damages provision does not mention profits, the actual damages provision does, and the Court therefore estimated Defendants' profits in determining *just* statutory damages. Nothing in the statute precludes the Court from doing so. And to the extent J & J argues the Court should not have considered Defendants' profits under the statutory damages provision, the argument serves only to reduce J & J's award by $975—the estimated profits. *See* Pl.'s Mot. to Alter J. 11.

Despite its concern with the Court's methodology for determining statutory damages, J & J has failed to provide any other reasonable interpretation of the statutory damages provision that would provide for a different calculation or approach. Instead, J & J simply asserts that "$10,000 is a proper damages award"—the maximum award permitted in the statutory damages provision—in this case. Mot. to Alter J. 14. In awarding statutory damages, especially in the context of a default judgment, the Court must be careful not to overcompensate the plaintiff. *See, e.g., Tibiri-Tabara, LLC*, 2019 WL 3402494, at *4 (noting courts' reluctance to award the maximum statutory award so as to not overcompensate plaintiffs). In this case, given the lack of evidence warranting a higher amount of damages, the Court finds J & J's request for the statutory maximum award to be overreaching. *See J & J Sports Prods, Inc. v. Vasquez*, 2012 WL 3025916, at *3–4 (N.D. Cal. July 24, 2012) (finding J & J's request for statutory maximum award overreached despite plaintiff's assertion that defendant "must be held accountable for a substantial amount above the market value of the sublicense fee")

J & J next argues the Court committed a clear error of law by improperly placing the burden on J & J to establish Defendants' profits when the actual damages provision does not require as much. Mot. to Alter J. 11. In estimating Defendants' profits from the violation, the Court considered a number of factors including the size of the establishment, the number of patrons, the number of screens broadcasting, cover charges, and additional money spent by patrons due to the broadcast. *See* Mem. 5, Aug. 28, 2019, ECF No. 22. J & J asserts the Court's consideration of these factors to estimate profits effectively placed the burden on J & J to establish the factors and thereby required more from J & J than is required under the actual damages provision—which only requires a plaintiff to prove gross revenue. *See* § 605(e)(3)(C)(i)(I). J & J argues Defendants should not benefit from their lack of participation in this case by requiring J & J to prove all damages.

J & J's argument on this point is unpersuasive. As J & J is undoubtedly well aware by now, given its practice of enforcing its rights through default judgments,[5] on a motion for default judgment, the Court does not accept the moving party's allegations regarding damages as true. *See E. Elec. Corp. of N.J. v. Shoemaker Const. Co.*, 657 F. Supp. 2d 545, 552 (E.D. Pa. 2009) ("[T]he Court need not accept the moving party's legal conclusions or factual allegations relating to the amount of damages."). Rather, when seeking a default judgment, the moving party is required to produce *some* evidence of damages. *See id.* ("A party's default does not suggest that the party has admitted the amount of damages that the moving party seeks." (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)); *see also* Fed. R. Civ. P. 55(b)(2) (providing a court may conduct a hearing on a motion for default judgment if needed to "determine the amount of

---

[5] *See J & J Sports Prods., Inc. v. Ferreiras*, No. 15-6546, 2018 WL 6168557, at *1 (E.D.N.Y. Nov. 20, 2018) (discussing hundreds of cases filed by J & J and stating "[w]ith rare exception, the defendant fails to appear, and J & J moves for default judgment").

9

damages"). J & J's argument that it should not have the burden to establish profits for its statutory damages award is thus not an option in the default judgment context. *See Yakubets*, 3 F. Supp. 3d at 281 ("Such expectations [to produce evidence] should come as no surprise, given that the default judgment standard itself requires a plaintiff to offer proof of damages.").

In this case, the Court looked to the record and found sufficient evidence establishing estimated profits of $975. This figure is in line with estimated profit awards J & J has received in other cases. If J & J believed such an amount would not compensate it sufficiently for its actual losses, it could have proceeded under the actual damages provision and provided evidence of its actual losses and Defendants' gross revenue attributable to the violation. *See id.* ("The inability to offer evidence of its expenses is, perhaps, how [a defendant's] default may be balanced to hurt it no less than [a plaintiff] which consequently cannot take discovery."). Alternatively, J & J could have produced more evidence to support its request for statutory damages—i.e. an affidavit stating (1) the number of patrons who go to Atmosphere on nights when the Program was not showing, (2) the number of patrons who ordered drinks and food, and/or (3) how much Atmosphere charged for certain food and drinks. *See id.* (stating private investigator could have gone to defendant's establishment on other nights, taken a picture of the menu, talked to a waitress, or asked how many people regularly come in). J & J has taken neither option, but instead makes the same unpersuasive arguments that have been rejected in other cases.

Finally, in the alternative, J & J argues even if statutory damages is an estimation of actual damages, the licensing fee *alone* is insufficient to estimate J & J's actual damages. Specifically, J & J asserts the Court incorrectly applied the reasoning of *Charter Communications Entertainment I, DST v. Burdulus*, 460 F.3d 168 (1st Cir. 2006), in estimating actual damages based on the $3,000 licensing fee Defendants would have paid to show the Program legally.

10

In *Burdulus*, the First Circuit upheld a statutory damages award based on "a reasonable estimate of actual damages." *See Burdulus*, 460 F.3d at 182 (discussing damages under similar § 553 provision). The estimate was "based solely on the estimated value of the services stolen." *Id.* at 181. Citing this language, J & J argues *Burdulus* does not "stand[] for the proposition . . . that actual damages are *per se* solely the licensing fee." Mot. to Alter J. 13. Instead, J & J asserts *Burdulus* suggests statutory damages should be "as reasonable an estimate of actual damages as the facts . . . allow." *See id.* J & J argues that while the licensing fee was the reasonable estimate of actual damages allowed by the facts in *Burdulus*, the same is not true in this case. *See id.*

Contrary to J & J's assertion, the Court does not suggest *Burdulus* created any per se rule. Rather, just as in *Burdulus*, the Court had reason to "limit[] the damage award to a reasonable estimate of actual damages." *Burdulus*, 460 F.3d at 182. In doing so, the facts allowed inclusion of not only the licensing fee, but the Defendants' estimated profits. And, in fact, in awarding statutory damages based on a reasonable estimate of actual damages, the Court did not limit J & J to the licensing fee, but also awarded Defendants' estimated profits from the violation.

J & J argues the facts allowed for a higher estimation of its actual damages. To support this argument, J & J points to Mr. Gagliardi's affidavit in which he states, "signal piracy has cost [J & J] 'several millions of dollars of sales revenue.'" *See* Mot. to Alter J. 13 (citing Gagliardi Aff. ¶¶ 12–13). There is no evidence, however, that J & J has lost millions of dollars as a result of the single violation at issue in this case. Insofar as J & J has suffered a loss of "several millions of dollars of sales revenue," this allegation does not justify imputing substantial damages to Defendants for the single violation of which they are responsible. Aside from Mr. Gagliardi's affidavit, J & J points to no other facts to persuade the Court to increase its estimation of actual

11

damages. With no other facts to support an increased award, J & J's request for $10,000 is unreasonable and would substantially overcompensate J & J for Defendants' violation.

If J & J *actually* suffered at least $10,000 in damages in *this* case, it could have produced more evidence to show as much. But it did not. Because J & J has failed to establish that the Court made a clear error of law in awarding statutory damages, the Court will not disturb its award of such damages in the amount of $3,975. J & J's motion to alter the judgment will be denied as to the amount of statutory damages awarded.[6]

Turning to the second issue in J & J's motion, J & J argues the Court committed clear error of law by holding Henderson liable for only the portion of the statutory damages award representing J & J's actual damages—the $3,000 licensing fee, rather than for the entire award. *See* Mot. to Alter J. 2. The Court agrees it committed error in determining Henderson's liability. The error, however, was in J & J's favor. Upon review, it is apparent the evidence is insufficient to hold Henderson liable for any portion of the damages award. Therefore, the Court will vacate its August 28, 2019, Memorandum and Order to the extent it held Henderson individually liable for a portion of the damages award.[7]

To hold an individual liable under § 605, the plaintiff must show the individual "(1) has the right and ability to supervise the violative activity, although he need not actually be

---

[6] J & J alternatively argues for a larger enhanced damages award should the Court not increase the statutory damages award. *See* Mot. to Alter J. 14 (stating if statutory damages of $10,000 is awarded, a multiplier of three is appropriate, but if statutory damages are not increased, then a multiplier of six is appropriate). J & J's argument is unpersuasive because the considerations for determining the appropriate multiplier are the same regardless of the amount of the statutory damages award. Further, J & J originally requested a multiplier of three in its application for default judgment. The Court thus does not disturb its award of enhanced damages.

[7] Because the Court now will not hold Henderson individually liable, the Court will not address the individual liability limitation issue raised by J & J—i.e., the propriety of limiting Henderson's liability to actual damages.

supervising, because he need not know of the violative activity, and (2) has a direct financial interest in the violation, i.e., financial benefits, even if not proportional or precisely calculable, that directly flow from the violative activity." *J & J Sports Prods Inc. v. Ramsay*, 757 F. App'x 93, 95 (3d Cir. 2017) (citing *Yakubets*, 3 F. Supp. 3d at 296). In *Ramsay*, another case brought by J & J, the Third Circuit reviewed the district court's denial of a default judgment against an individual for an entity's violation of § 605. *See id.* at 95. The Third Circuit held the district court correctly concluded "J & J did not adduce facts to impose individual liability on" the individual. *Id.* at 96.

In that case, J & J alleged the individual defendant was the "managing member." *See id.* This fact, however, was insufficient to impose individual liability. *See id.* J & J also alleged the individual defendant obtained amusement and commercial activity licenses for the entity, but these allegations also fell short as "the fact that [the individual] applied for and received the amusement and business licenses is insufficient to show he had the right to control or supervise the activities" at the establishment. *Id.* J & J further alleged individual liability applied despite its primary reliance on allegations in its complaint "made upon information and belief." *See id.* The Third Circuit noted these allegations were distinguishable from cases where the plaintiff produced factually-supported documents and upheld the district court's denial of individual liability. *See id.* (citing *Cruz*, 2015 WL 2376290, at *4). In so holding, the court distinguished *Yakubets* in which the individual held a liquor license and that license was sufficient to establish individual liability because it identified the individual as the president, secretary/treasurer, director, stockholder, and manager/steward of the pirating business. *See id.* (citing *Yakubets*, 3 F. Supp. 3d at 297, 300–01).

As in *Ramsay*, the only evidence offered to support individual liability here is Henderson's name on the Pennsylvania Liquor Control Board website and the "food preparing and serving" license for Atmosphere. The "general license information" page of the website lists Henderson as

a "member," *see* Riley Aff. Ex. 1, not a "managing member," as J & J avers and the Court erroneously stated in its August 28, 2019, Memorandum. Another individual, Ahmad A. Henderson, is also listed on the webpage, with the title "manager/steward." *See id.* On the license itself, Henderson's name appears on the line marked "Business Site." *See id.* Ex. 2 ("Business Site: Henderson S Rahim (Atmosphere Bar & Lounge, LLC) 430 W Indiana Ave, Philadelphia 19133-3217"). Upon further review, the Court finds these facts are insufficient to hold Henderson liable for any portion of the damages award.

First, the fact that Ahmed Henderson is listed as Atmosphere's "manager/steward" creates doubt regarding whether Rahim Henderson had the ability to control or supervise Atmosphere's activities. This fact distinguishes this case from *Yakubets*. In that case, the court recognized "what [the liquor license] specifically state[d] about [the individual's] role" created an inference that the individual had the right and ability to supervise because the liquor license listed the individual as the president, secretary/treasurer, director, stockholder, and manager/steward. *See Yakubets*, 3 F. Supp. 3d at 300–01. Such an inference cannot be made based on Henderson's role as merely a "member" of Atmosphere, where the license references another person as "manager." *See Ramsay*, 757 F. App'x at 96–97 (upholding district court's denial of individual liability because individual's names merely appeared on entity licenses and the record did not show the licenses imposed any particular obligations on him).

Second, aside from the business license, J & J relies only on conclusory allegations based on information and belief. "[C]onclusory allegations of a right and ability to supervise the violative activity and direct financial interest are not enough." *J & J Sports Prods., Inc. v. Giraldo*, No. 15-3101, 2015 WL 7014649, at *3 (E.D. Pa. Nov. 12, 2015). A party seeking default judgment must offer facts to support the plausibility of conclusory allegations. *See Yakubets*, 3 F. Supp. 3d at

299-301. J & J has not offered any evidence or specific facts that increase the plausibility of its conclusory allegations regarding Henderson's role at Atmosphere. Rather, the conclusory allegations in the Complaint merely "parrot the test for vicarious liability." *Joe Hand Promotions, Inc. v. Michelina Enterprises, Inc.*, No. 16-1880, 2017 WL 3581674, at *5 (M.D. Pa. Aug. 18, 2017); *Yakubets*, 3 F. Supp. 3d at 299; *see also* Compl. ¶¶ 9–14. Although J & J, in its application for default judgment, argued Henderson's name on the licenses added plausibility to its allegations, the Court disagrees. For the reasons stated above, the license does not show Henderson was the sole managing member of Atmosphere. The allegations are thus no more plausible and no less conclusory than without Henderson's name on the license.

Third, J & J's reliance on *Yakubets* in establishing Henderson's liability is unpersuasive. At the outset, the Court notes that in its application for default judgment, J & J relied on *Yakubets* for the proposition that plausibility of conclusory allegations may be established by inference. *See* Br. in Supp. for App. for Default J. 6–7, ECF No. 14-1 (arguing Henderson's name on the business license added plausibility to allegations in Complaint). In the instant motion, however, J & J alleges *Yakubets* created an improper test for vicarious liability in the context of § 605. *See* Mot. to Alter J. 5–9. To the extent J & J relied on *Yakubets* as supporting Henderson's liability, the case is distinguishable. *See Yakubets*, 3 F. Supp. 3d at 301 ("But the closeness and narrowness of the holding here must be emphasized."). Unlike the individual in *Yakubets*, whose status as "*all of* President, Secretary/Treasurer, Director, Stockholder, and Manager/Steward" was enough to "tip the scales . . . [to] fill[] an otherwise empty allegation made 'on information and belief,'" *id.* at 300–01, Henderson did not have a similar role within Atmosphere.

As for J & J's new argument in *this* motion, its dispute with *Yakubets*'s test for vicarious liability is unpersuasive in light of *Ramsay*, in which a panel of the Third Circuit cited to *Yakubets*

15

for its vicarious liability test in the context of § 553 and § 605. *See Ramsay*, 757 F. App'x at 95–96. The Court recognizes *Ramsay* is a non-precedential opinion, but the Court is nevertheless persuaded *Yakubets* correctly sets forth the test for determining vicarious liability under § 605 absent precedential Third Circuit authority to the contrary. J & J has produced no arguments persuading the Court to deviate from this approach.

Upon review, and given the lack of evidence to show Henderson had the right and ability to supervise activities at Atmosphere, the Court concludes Henderson cannot be held individually liable for the piracy violation. The Court will thus alter its August 28, 2019, Order to this effect. Because the Court will not grant J & J the relief it seeks as to the judgment against Henderson however, J & J's motion will be denied.

**CONCLUSION**

For the reasons set forth above, the Court will deny J & J's motion to alter or amend judgment. The Court will nonetheless alter its August 28, 2019, Order because there is insufficient evidence to hold Henderson individually liable for any portion of the award. Accordingly, the Court will vacate its August 28, 2019, Order and enter Judgment against Atmosphere only in the amount of $15,900, including $3,975 of statutory damages and $11,925 of enhanced damages as discussed in the Court's August 28, 2019, Memorandum.

An appropriate Order and Judgment follow.

ENT'D DEC ../ 2019

BY THE COURT:

Juan R. Sánchez, C.J.

12/17/19

Henderson
Atmosphere
Bar

16